T.C. Memo. 2020-51

UNITED STATES TAX COURT

DEWAYNE BRIDGES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26519-16.                    Filed April 27, 2020.

Val J. Albright, Zachary T. Jones, David M. Nissman, and Michelle Y. Ku, for petitioner.

Justin C. Barnhill, Randall L. Eager, Jr., Brooke N. Stan, and Douglas S. Polsky, for respondent.

MEMORANDUM OPINION

RUWE, Judge:  This matter is before the Court on petitioner's motion to dismiss for lack of jurisdiction the portion of this case that relates to certain

**[\*2]** adjustments to Dani, LLC's returns that flowed through to petitioner.[1]

Respondent determined that certain adjustments to Dani, LLC's returns flowed through to petitioner and were subject to the normal deficiency procedures rather than procedures from the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648 (codified as amended at sections 6221-6234), and issued petitioner a notice of deficiency.

The issue for decision is whether respondent, in reliance on section 6231(g)(2),[2] reasonably determined that TEFRA procedures did not apply to Dani, LLC, for the 2011 and 2012 tax years. Section 6231(g)(2) provides: "If, on the basis of a partnership return for a taxable year, the Secretary <u>reasonably</u> <u>determines</u> that this subchapter [TEFRA] does not apply to such partnership for such year but such determination is erroneous, then the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership." (Emphasis added.) For the reasons discussed below, we will deny petitioner's motion to dismiss.

---

[1]On October 4, 2018, this Court consolidated this case with a related case at docket No. 26528-16 for trial, briefing, and opinion. These cases, however, were not consolidated for purposes of this motion.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** <u>Background</u>

When the petition was filed, petitioner resided in the U.S. Virgin Islands.

During the 2011 and 2012 tax years Dani, LLC, was a U.S. limited liability company (LLC) formed under the laws of the State of Missouri. Certain adjustments to Dani, LLC's tax returns flowed through to petitioner's individual income tax returns for the years at issue. During the years at issue Dani, LLC, appears to have had two partners: the DeWayne W. Bridges Revocable Trust (Bridges Trust) and the Steven C. Mitchem Revocable Trust (Mitchem Trust). Each partner owned 50% of Dani, LLC.[3]

<u>Dani, LLC's Tax Returns</u>

Central to the question before this Court is who the partners in Dani, LLC, reasonably appeared to be according to Dani, LLC's tax returns for the 2011 and 2012 tax years. Petitioner argues that it was impossible for respondent to reasonably determine who the partners were solely on the basis of the returns because the returns were "inconsistent and irreconcilable". Respondent argues that petitioner and Mr. Mitchem appeared to be the partners on the returns. We

---

[3]Respondent has conceded solely for purposes of these consolidated cases that the Bridges Trust and the Mitchem Trust were the actual passthrough partners in Dani, LLC, during 2011 and 2012.

[*4] summarize the applicable sections of Dani, LLC's returns for 2011 and 2012 and provide images of applicable portions of the returns where appropriate.

Dani, LLC, timely filed partnership returns on Forms 1065, U.S. Return of Partnership Income, for the 2011 and 2012 tax years.

Schedule B, Other Information, of each return answered "no" to the question "[a]t any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person?"

Schedule B of each return answered "no" to the question at the end of the tax year, "[d]id any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership?"

Schedule B of each return also answered "yes" to the question at the end of the tax year, "[d]id any individual or estate own, directly or indirectly, an interest of 50% or more in profit, loss, or capital of the partnership?"

**[\*5]** A copy of the pertinent part of Schedule B from Dani, LLC's Form 1065 for 2011, which is substantively identical to the Schedule B from Dani, LLC's Form 1065 for 2012, is provided below.

| Form 1065 (2011) DANI, LLC | | | | Page 2 |
|---|---|---|---|---|
| **Schedule B** Other Information | | | Yes | No |
| 1 | What type of entity is filing this return? Check the applicable box: | | | |
| a | ☐ Domestic general partnership   b ☐ Domestic limited partnership | | | |
| c | ☒ Domestic limited liability company   d ☐ Domestic limited liability partnership | | | |
| e | ☐ Foreign partnership   f ☐ Other ▶ | | | |
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | | | X |
| 3 | At the end of the tax year: | | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X | |

Part II, Individuals or Estates Owning 50% or More of the Partnership, of Schedule B-1, Information on Partners Owning 50% or More of the Partnership, of each return listed Steven C. Mitchem and petitioner as 50% partners of Dani, LLC, in their capacities as individuals or estates. A copy of the pertinent part of Part II of Dani, LLC's Schedule B-1 for 2011, which is substantively identical to Part II of Dani, LLC's Schedule B-1 for 2012, is provided below.

[*6]

Client Copy

| Part II | Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b) | | |
|---|---|---|---|
| Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions). | | | |
| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
| STEVEN C MITCHEM | | Virgin Islands (US) | 50.000000 |
| DEWAYNE BRIDGES | | Virgin Islands (US) | 50.000000 |
| | | | |
| | | | |
| | | | |
| | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.

Schedule B-1 (Form 1065) (Rev. 12-2011)

Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., for 2011 and 2012 list both Steven C. Mitchem and Dewayne Bridges as Dani LLC's two partners. On each applicable Schedule K-1 Mr. Mitchem and petitioner are listed as 50% owners of Dani, LLC. And on Line I of Part II of each applicable Schedule K-1 in response to the question "[w]hat type of entity is this partner" Dani, LLC, clearly and unambiguously answered "individual". The 2011 Schedule K-1 for petitioner, which is substantively identical to his 2012 Schedule K-1, and the 2011 Schedule K-1 for Mr. Mitchem, which is substantively identical to his 2012 Schedule K-1, are provided below.

[*7]

| Partner# 2<br>Schedule K-1<br>(Form 1065)<br><br>Department of the Treasury<br>Internal Revenue Service | 2011 | | | |
|---|---|---|---|---|

**651111**

|  Final K-1 |  Amended K-1 | OMB No. 1545-0099 |
|---|---|---|

For calendar year 2011, or tax
year beginning _____
ending _____

## Partner's Share of Income, Deductions, Credits, etc. ▶ See back of form and separate instructions.

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code

DANI, LLC

P.O. BOX 7648
OVERLAND PARK        KS 66207

**C** IRS Center where partnership filed return

Ogden, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code

DEWAYNE BRIDGES

Client Copy

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I** What type of entity is this partner? **Individual**

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 50.000000 % | 50.000000 % |

**K** Partner's share of liabilities at year end:

| Nonrecourse | $ |
|---|---|
| Qualified nonrecourse financing | $ |
| Recourse | $ 539,952 |

**L** Partner's capital account analysis:

| Beginning capital account | $ 1,632,932 |
|---|---|
| Capital contributed during the year | $ 712,906 |
| Current year increase (decrease) | $ 187,247 |
| Withdrawals & distributions | $ ( 2,427 ) |
| Ending capital account | $ 2,530,658 |

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If "Yes," attach statement (see instructions)

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| 1 | Ordinary business income (loss) **187,247** | 15 | Credits |
|---|---|---|---|
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| | | 19 | Distributions |
| 12 | Section 179 deduction | C* | STMT |
| 13 | Other deductions | | |
| | | 20 | Other information |
| | | Y* | STMT |
| 14 | Self-employment earnings (loss) | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.
DAA

Schedule K-1 (Form 1065) 2011

[*8]

DAN5725 07/08/2012 5:16 PM

| | | 651111 |
|---|---|---|
| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0099 |

**Partner# 1**

**Schedule K-1 (Form 1065)**

**2011**

Department of the Treasury
Internal Revenue Service

For calendar year 2011, or tax

year beginning _____

ending _____

## Partner's Share of Income, Deductions, Credits, etc. ▶ See back of form and separate instructions.

| Part I | Information About the Partnership |
|---|---|
| A | Partnership's employer identification number |
| B | Partnership's name, address, city, state, and ZIP code |

DANI, LLC

P.O. BOX 7648
OVERLAND PARK        KS 66207

| C | IRS Center where partnership filed return |
|---|---|

Ogden, UT

| D | ☐ Check if this is a publicly traded partnership (PTP) |
|---|---|

| Part II | Information About the Partner |
|---|---|
| E | Partner's identifying number |
| F | Partner's name, address, city, state, and ZIP code |

STEVEN C MITCHEM

| G | ☐ General partner or LLC member-manager | ☒ Limited partner or other LLC member |
|---|---|---|
| H | ☒ Domestic partner | ☐ Foreign partner |
| I | What type of entity is this partner? | Individual |

J  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 50.000000 % | 50.000000 % |

K  Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ |
| Recourse | $ 539,952 |

L  Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 1,632,932 |
| Capital contributed during the year | $ 712,907 |
| Current year increase (decrease) | $ 187,247 |
| Withdrawals & distributions | $ ( 2,428 ) |
| Ending capital account | $ 2,530,658 |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book

☐ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?

☐ Yes   ☒ No

If "Yes," attach statement (see instructions)

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 187,247 | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| | | | |
| | | 19 | Distributions |
| 12 | Section 179 deduction | C* | STMT |
| 13 | Other deductions | 20 | Other information |
| | | Y* | STMT |
| 14 | Self-employment earnings (loss) | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.

DAA

Schedule K-1 (Form 1065) 2011

**[*9]**  Despite the overwhelming evidence on the returns that petitioner and Mr. Mitchem were 50% partners in Dani, LLC, in their capacities as individuals, information on an attachment to the Schedules K-1 suggested Dani, LLC, may have had a different partner.  Line 20Y, Additional Supplemental Information to Schedule K-1, a statement that was attached to the 2011 and 2012 Schedules K-1, inaccurately stated that Dani, LLC, was 100% owned by Half Done, LLC, a disregarded entity which was 100% owned by SCS Processing, LLC, a foreign disregarded entity located in St. Kitts and Nevis.  In fact it appears that Dani, LLC, was the 100% owner of Half Done, LLC, which was the 100% owner of SCS Processing, LLC.  This information was again repeated on Line 20C, Other Items and Amounts, of the same attachment.  A copy of Line 20Y is provided below for 2012 for petitioner, which is substantively identical to his 2011 Line 20Y and Mr. Mitchem's 2011 and 2012 Lines 20Y.

**[*10]**

| DAN5725 DANI, LLC | | 9/12/2013 7:55 PM |
|---|---|---|
| ▮ | **Federal Statements** | |
| FYE: 12/31/2012 | **DEWAYNE BRIDGES** ▮ | |

**Schedule K-1, Line 19C - Distributions of Property Other Than Money**

| Description of Property | Adjusted Basis | Fair Market Value |
|---|---|---|
| 2008 corvette | $ 1 | $ 27,000 |

**Schedule K-1, Line 20Y - Additional Supplemental Information**

| Description | |
|---|---|
| GROSS ONCOME FROM ALL SOURCES | 28,346,452 |
| COST OF GOODS SOLD ALL SOURCES | 20,491,365 |
| OPERATING EXPENSE ALL SOURCES | 7,824,666 |
| NET INCOME PER SCH M-1 LINE 1 | 31,046 |

Form 8858 line 5 information:

Dani, LLC US partnership filer

owned 100% by:

HALF DONE, LLC A US DISREGARDED ENTITY

OWNED 100% BY:

SCS PROCESSING, LLC A FOREIGN DISREGARDED ENTITY

ST KITTS AND NEVIS

Client Copy

SCS Processing, LLC, and Half Done, LLC, also appear on Dani, LLC's Forms 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, as disregarded entities for 2011 and 2012. On the first page of Form 8858, however, the form appears to state that Dani, LLC, was the owner of Half Done, LLC.

[*11] The tax returns make no mention of the Bridges Trust and the Mitchem Trust, nor do they at any time ever imply that the trusts owned Dani, LLC.

The Audit

Petitioner has provided an exhaustive summary of the audit, most of which is irrelevant to the issue before us. Nonetheless, we briefly summarize certain portions of the audit to give context to our decision.

Revenue Agent Joi Smith was assigned to examine petitioner's and Mr. Mitchem's returns for the 2011 and the 2012 tax years. As part of the examination, Agent Smith was tasked with determining whether any adjustments to Dani, LLC's tax returns, which would flow through to petitioner's and Mr. Mitchem's individual income tax returns, would trigger TEFRA procedural requirements.

Agent Smith began her examination on July 30, 2013. In the course of this examination Agent Smith reviewed Dani, LLC's returns, conducted research, and had a series of internal discussions. The research and internal discussions sought to, among other things, reconcile certain inconsistences on the returns regarding the identity of Dani, LLC's partners.

As part of these internal discussions Agent Smith contacted TEFRA Coordinator Bill Kahnke, Partnership Program Analyst Cindy Milligan, and

**[\*12]** Technical Specialist Frank Cincotta in February 2014. Most of these internal discussions centered around identifying who the partners of Dani, LLC, were according to the returns and the related issue of whether TEFRA procedures should apply to Dani, LLC. There appears to have been some initial confusion regarding both of these issues.

Ultimately, these initial discussions appear to have culminated with an email from TEFRA Coordinator Deborah Collins to Agent Smith which stated "in regards to Dani, LLC is is not [sic] TEFRA", which Agent Smith purportedly understood to mean that TEFRA did not apply. Petitioner disputes Agent Smith's understanding of the email and argues that the email should not be read to say that TEFRA did not apply.

After these conversations, Agent Smith scheduled an initial meeting with Dani, LLC's representatives and sent out an information document request seeking, among other things, financial records, operating agreements, and organization charts.

On April 22, 2014, an initial meeting took place between Agent Smith and Dani, LLC's representatives. By that date representatives of Dani, LLC, had provided Agent Smith with two relevant items: an operating agreement and a

**[\*13]** chart. On both the operating agreement and the chart it appeared that the partners in Dani, LLC, were the Bridges Trust and the Mitchem Trust.

Agent Smith wrote "true owners" on a copy of the chart provided by Dani, LLC, on April 22, 2014, next to where the Bridges Trust and the Mitchem Trust were listed, although Agent Smith claims that this writing referred to petitioner and Mr. Mitchem and not the trusts. This same chart also showed that Dani, LLC, was the owner of Half Done, LLC. A copy of the chart is provided below.

**[*14]**



Notice of Deficiency

Respondent issued petitioner a notice of deficiency on October 11, 2016.

Respondent determined deficiencies of $2,923,658 and $4,204,640 for the 2011

and 2012 tax years, along with additions thereto under section 6651(a)(1) of

**[*15]** $657,823 and $946,044 for the 2011 and 2012 tax years, additions thereto under section 6651(a)(2) of $730,914.50 for the 2011 tax year and an amount to be computed at a later date for the 2012 tax year, and additions thereto under section 6654 of $57,882.05 and $75,381.83 for the 2011 and 2012 tax years.

The Form 886A, Explanation of Items, accompanying the notice of deficiency stated that arrangements between Dani, LLC, SCS Processing, LLC, and Sand Dollar Capital Management, LLLP, lacked economic substance and that any transaction entered into during tax years 2011 and 2012 pursuant to any arrangement between those entities was disregarded for Federal tax purposes. It also stated that the "other" expenses claimed on the returns of Dani, LLC, for tax years 2011 and 2012 were not deductible. In addition it stated that petitioner received net income from Dani, LLC, that was U.S. source income.

## Discussion

### I. Jurisdiction

This Court is a court of limited jurisdiction; we may exercise our jurisdiction only to the extent provided by statute. See sec. 7442; GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000). We have jurisdiction to redetermine a deficiency if the Commissioner issues a valid notice of deficiency

**[\*16]** and the taxpayer files a timely petition.  <u>GAF Corp. & Subs. v.

Commissioner</u>, 114 T.C. at 521.

Petitioner argues that respondent erroneously determined that TEFRA did

not apply to Dani, LLC, and that the notice of deficiency issued to petitioner for

tax years 2011 and 2012 was invalid insofar as adjustments to or from Dani, LLC,

were determined, as Dani, LLC, was an LLC whose members included two grantor

trusts at all relevant times and therefore was subject to TEFRA.  <u>See</u> sec.

6231(a)(9); sec. 301.6231(a)(1)-1(a)(2), Proced. & Admin. Regs.  Therefore,

petitioner argues that this Court lacks jurisdiction.  For the reasons discussed

below, we find that the notice of deficiency was valid and that this Court has

jurisdiction.

II.     <u>TEFRA and Section 6231(g)(2)</u>

Section 6231(a)(1)(A) generally applies the TEFRA provisions to any entity

that is required to file a partnership return.  But section 6231(a)(1)(B)(i) provides

an exception to this general rule.  Under section 6231(a)(1)(B)(i), TEFRA

provisions do not apply to small partnerships, which include "any partnership

**[\*17]** having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner."[4]

TEFRA provisions do apply, however, if any partner in the partnership is a "pass-thru partner". Sec. 301.6231(a)(1)-1(a)(2), Proced. & Admin. Regs. A "pass-thru partner" is a "partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted." Sec. 6231(a)(9). A passthrough partner includes disregarded entities such as single-member LLCs. See, e.g., Seaview Trading, LLC v. Commissioner, 858 F.3d 1281 (9th Cir. 2017); Bedrosian v. Commissioner, 143 T.C. 83, 104 (2014), aff'd, 940 F.3d 467 (9th Cir. 2019); Rev. Rul. 2004-88, 2004-2 C.B. 165.

When the notice of deficiency was issued, respondent had concluded that Dani, LLC's partners were petitioner and Mr. Mitchem, that the small partnership exception applied, and that TEFRA did not apply. Respondent has now conceded for purposes of this motion that the small partnership exception did not apply because the Bridges Trust and the Mitchem Trust, and not petitioner and Mr. Mitchem, were the partners of Dani, LLC, at all relevant times.

---

[4]Sec. 6231(a)(1)(B)(ii) also allows a partnership to elect to have the small partnership exception not apply but no such election took place in this case.

[*18] Respondent argues that even if the small partnership exception did not apply, he may still rely on section 6231(g)(2). If section 6231(g)(2) applies, respondent did not need to follow the procedural requirements of TEFRA and this Court would have jurisdiction.

Section 6231(g)(2) provides: "If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter [TEFRA] does not apply to such partnership for such year but such determination is erroneous, then the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership." (Emphasis added.)

This Court has noted in the past that TEFRA procedures are "distressingly complex and confusing" and that it "can even be complex and confusing to determine whether a partnership is subject to TEFRA." Bedrosian v. Commissioner, 143 T.C. at 103-104 (citing Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 92 (2012), aff'd in part, rev'd in part sub nom. Logan Tr. v. Commissioner, 616 F. App'x 426 (D.C. Cir. 2015), and Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 539-540 (2000)). We have also noted that the difficulties in determining whether TEFRA partnership procedures apply are generally caused by the difficulties in

[*19] determining whether the partnership in question was an exempt "small partnership", which is precisely the issue before us. See Jimastowlo Oil, LLC v. Commissioner, T.C. Memo. 2013-195.

Congress was aware of the difficulties the Commissioner has faced in determining whether TEFRA applies and enacted section 6231(g)[5] as part of the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1232(a), 111 Stat. at 1023, to help alleviate the problem. See Bedrosian v. Commissioner, 143 T.C. at 104-107.

The provision was intended as a relief provision for the Commissioner in situations where he has difficulty determining whether a partnership is subject to TEFRA. The House Ways and Means Committee Report makes this clear, where

_____

[5]Sec. 6231(g) has two separate paragraphs. Para. (1) serves a similar purpose to that of para. (2) and provides: "If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter applies to such partnership for such year but such determination is erroneous, then the provisions of this subchapter are hereby extended to such partnership (and its items) for such taxable year and to partners of such partnership." In effect, this provision states that if the Commissioner erroneously determines that TEFRA applies to a non-TEFRA partnership, the partnership will be subject to TEFRA so long as that determination was reasonable on the basis of the partnership's tax return.

Further, the title of subsec. (g), "Partnership return to be determinative of whether subchapter applies", can assist this Court in resolving any ambiguity in the statute. See Caltex Oil Venture v. Commissioner, 138 T.C. 18, 28 (2012) (citing Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008)).

**[\*20]** the "Reasons for Change" states:  "The IRS often finds it difficult to determine whether to follow the TEFRA partnership procedures or the regular deficiency procedures.  \* \* \* [T]he IRS might inadvertently apply the wrong procedures and possibly jeopardize any assessment.  Permitting the IRS to rely on a partnership's return would simplify the IRS' task."  H.R. Rept. No. 105-148, at 587-588 (1997), 1997-4 C.B. (Vol. 1) 319, 909-910 (emphasis added).  As this Court previously noted, "Congress' goal in enacting section 6231(g) was to simplify the IRS' task of choosing between the TEFRA procedures and the normal deficiency procedures by permitting the IRS to rely on a partnership's return." Bedrosian v. Commissioner, 143 T.C. at 105.

The Commissioner may rely on section 6231(g)(2) if three elements are met: (1) the Commissioner determined on the basis of the partnership return that the TEFRA procedures did not apply to the partnership for that year, (2) the determination was reasonable, and (3) the determination turned out to be erroneous.  Bedrosian v. Commissioner, 143 T.C. at 106.  Both parties agree for purposes of this motion that respondent's determination that TEFRA did not apply was erroneous.  Accordingly, we analyze the first two elements below.

**[*21]** A.     On the Basis of the Partnership Return

The first element of section 6231(g)(2) is met if, on the basis of Dani LLC's 2011 and 2012 returns, respondent determined that the TEFRA procedures did not apply.  See Bedrosian v. Commissioner, 143 T.C. at 106.  Respondent may rely solely on the returns when making a determination as to whether TEFRA applies.  See sec. 6231(g); Bedrosian v. Commissioner, 143 T.C. at 103-105; Sarma v. Commissioner, T.C. Memo. 2018-201, at *22.

Respondent argues that he made his erroneous determination on the basis of the partnership returns and that disputed information provided during the examination that conflicted with those returns, such as the operating agreement and the chart that suggested the partners in Dani, LLC, were the Bridges Trust and the Mitchem Trust, does not prevent him from relying on section 6231(g)(2).

Based on the record we agree with respondent that he made his determination on the basis of the partnership returns.  Further, we agree with respondent that conflicting information provided during the give-and-take of the examination that remained in dispute did not prevent him from relying on the returns to make a TEFRA determination.

Petitioner argues that respondent's erroneous determination that TEFRA did not apply was not made solely on the basis of the returns and therefore he cannot

[*22] rely on section 6231(g)(2).[6] In addition petitioner argues that the chart and operating agreement provided to respondent during the examination showed that the partners in Dani, LLC, were grantor trusts, and therefore respondent could not rely on the partnership returns to make a determination.

Petitioner cites, among other nonprecedential sources, Chief Counsel Advice 201319014 (May 10, 2013) to argue that respondent could not rely on the partnership returns to make a TEFRA determination because respondent "can[not] reasonably rely on * * * [a] return if * * * [he is] aware of contrary facts." Petitioner argues that the partnership identities disclosed on the operating agreement and chart constitute "contrary facts" that prevented respondent from reasonably relying on the returns.

Chief Counsel Advice is not the law and may not be used or cited as precedent. Sec. 6110(b)(1)(A), (k)(3); see Elbaz v. Commissioner, T.C. Memo. 2015-49, at *8 ("[W]e may not use or cite as precedent IRS Chief Counsel Advice * * * in deciding this case."); see also Ellison v. Commissioner, T.C. Memo. 2004-57, slip op. at 18 ("Parties are statutorily proscribed from citing chief counsel

---

[6]The determination as to whether TEFRA applied was made with the notice that concluded the examination. In this case that was the notice of deficiency issued to petitioner on October 11, 2016. See Bedrosian v. Commissioner, 143 T.C. 83, 106-107 (2014), aff'd, 940 F.3d 467 (9th Cir. 2019).

[*23] advice as precedent."). But we also note that the information in the operating agreement and the chart did not rise to the level of "contrary fact" until after a TEFRA determination was made. In fact neither petitioner nor respondent appears to have believed that either the Bridges Trust or the Mitchem Trust was a partner until after a petition was filed with this Court, as the initial petition filed identified petitioner, rather than the Bridges Trust, as a partner in Dani, LLC.

In Bedrosian v. Commissioner, 143 T.C. at 107-108, this Court highlighted that although a TEFRA determination is not made until the notice that concludes the examination, as a practical matter the Commissioner will inevitably have to choose to treat the examination as though it is or is not a TEFRA examination at an earlier date. As a result, during the give-and-take of an examination information that conflicts with the returns may arise before a TEFRA determination has been made.

Disputed information that arises during the give-and-take of an examination, such as the partnership identities disclosed in the operating agreement and the chart, does not prevent the Commissioner from relying on section 6231(g). If we found otherwise, we would neuter section 6231(g) as a relief provision and discourage a fair, efficient, and cooperative examination process. Further, petitioner does not provide any precedential legal authority for

[*24] his position, which directly contradicts both the plain language of section 6231(g) and congressional intent.

Respondent made an attempt to resolve potential ambiguities on the returns, and after his inconclusive investigation, ultimately relied on the partnership returns when he made the determination that TEFRA did not apply. Accordingly, we find that on the basis of Dani LLC's 2011 and 2012 returns respondent determined that the TEFRA procedures did not apply and that neither the operating agreement nor the chart prevented him from relying on section 6231(g)(2). The only question for us to decide, then, is whether respondent's determination was reasonable on the basis of the partnership returns.

B.    A Reasonable Determination

The second element of section 6231(g)(2) is met if the Commissioner "reasonably determines" on the basis of the partnership returns that the partnership at issue is not subject to TEFRA. (Emphasis added.) Because of legislative silence on the definition of "reasonably", this Court has given the term its ordinary meaning. Bedrosian v. Commissioner, 143 T.C. at 109. This Court has opted to interpret the ordinary meaning of "reasonably" in light of both the dictionary definition of reasonable and the reasonable basis standard under the Code. Id. at 109-110 (comparing "reasonably" under section 6231(g) to the dictionary

[*25] definition of "reasonable" as well as the "reasonable basis" standard under the Code). This Court has also highlighted that determining whether TEFRA applies to a partnership requires a similar type of inquiry as the reasonable basis standard. Id. at 110 ("[D]etermining whether TEFRA applies to a particular partnership involves the application of the law (specifically, section 6231(a)(1)) to a set of facts (specifically, the information shown on the face of a partnership return). The reasonable basis standard of reporting involves the same type of inquiry."). In Bedrosian v. Commissioner, 143 T.C. at 110, this Court defined the reasonable basis standard as

> a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper. The reasonable basis standard is not satisfied by a return position that is merely arguable or that is merely a colorable claim. If a return position is reasonably based on one or more of the authorities set forth in § 1.6662-4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in § 1.6662-4 (d)(2). * * * [Sec. 1.6662-3(b)(3), Income Tax Regs.]

(Alteration in original.) It is against this backdrop that we analyze whether respondent's determination that TEFRA did not apply was reasonable.

Petitioner's answers on Schedule B strongly imply that Dani, LLC's partners were individuals and directly contradict the claim that the partners were

[*26] passthrough entities.  The Schedules B-1 directly list petitioner and Mr. Mitchem as partners and 50% owners and strongly suggest they are individuals. The Schedules K-1 clearly list petitioner and Mr. Mitchem as individuals, partners, and 50% owners of Dani, LLC.  Further, the Schedules K-1 were issued to petitioner and Mr. Mitchem, and Schedules K-1 are generally issued only to the partners of the partnership.  Sec. 6031(b).

The only hints that TEFRA might apply are hidden away on Lines 20Y and 20C of an attachment to the Schedules K-1, where petitioner incorrectly states that Dani, LLC, was 100% owned by Half Done, LLC, a disregarded entity which was in turn 100% owned by SCS Processing, LLC, a foreign disregarded entity located in St. Kitts and Nevis.  In fact it appears that Dani, LLC, was the owner of Half Done, LLC.  This information on the attachments to the returns that itself isn't even correct is directly contradicted by every other applicable portion of the returns.

Respondent's determination did not need to be right, it just needed to be reasonable.  His determination that TEFRA did not apply, based on the conclusion that the partners in Dani, LLC, were petitioner and Mr. Mitchem, was eminently reasonable and well grounded in the information shown on the face of the returns.

[*27] Petitioner argues that this case is comparable to Bedrosian and that we should find respondent's determination unreasonable because the mention of a passthrough partner on a return by law operates to make the determination that TEFRA does not apply unreasonable. We disagree with petitioner's characterization of Bedrosian and think the facts in Bedrosian actually favor respondent.

Petitioner argues that "[t]he presence of any passthrough partner precludes the application of the small partnership exception of section 6231(a)(1)(B) and renders the partnership subject to TEFRA as a matter of law." Bedrosian v. Commissioner, 143 T.C. at 111. In Bedrosian v. Commissioner, 143 T.C. at 110-111, one Schedule K-1 listed an S corporation as a partner, while the other Schedule K-1 listed an LLC as a partner, although it identified the LLC as an individual on the Schedule K-1. Under those circumstances the Court found "the only reasonable conclusion" was that TEFRA applied. Id. at 111. The Commissioner was able to ignore the errant and obviously incorrect statement that the LLC was an individual because the totality of the return and common sense demonstrated that the partners in that partnership were an S corporation and an LLC.

[*28] In the case before us the analogous portions of the Schedules K-1 (along with the rest of the returns) clearly identify petitioner and Mr. Mitchem as both the partners and as individuals. The mentions on the returns of Half Done, LLC, and SCS Processing, LLC, are similar to the inaccurate listing of the LLC as an "individual" on the Schedule K-1 in Bedrosian, and this minor inconsistency does not demonstrate the "presence" of a passthrough partner as a matter of law when it is contradicted by the rest of the returns.

Petitioner also argues that the returns are "internally inconsistent and irreconcilable" and that it was impossible for respondent to make a reasonable determination as to whether TEFRA applied. But in Bedrosian the return was arguably even more inconsistent because, in addition to the inconsistency on the Schedule K-1, an answer on Schedule B directly contradicted the partner identities on the Schedules K-1 as well. In that case this Court did not think those inconsistencies prevented a TEFRA determination from being made. We think respondent can disregard minor, inaccurate inconsistencies contradicted by the totality of the returns here as well. Petitioner cannot litter his returns with misleading and inaccurate information, selectively rely upon the information, and then expect to bamboozle his way to a procedural victory.

Accordingly, petitioner's motion to dismiss will be denied.

**[*29]** In reaching our conclusion, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

<u>An appropriate order will be issued</u>.